SCIOTO TRAILS COMPANY ET AL., APPELLANTS, *v.* OHIO DEPARTMENT OF LIQUOR CONTROL ET AL., APPELLEES.

(No. 82AP-961—Decided June 30, 1983.)

Messrs. *Crabbe, Brown, Jones, Potts & Schmidt* and *Mr. Larry H. James,* for appellants.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. James M. Sterner,* for appellees.

WHITESIDE, P.J. Plaintiffs, Scioto Trails Company *et al.,* appeal from a judgment of the Franklin County Court of Common Pleas and raise three assignments of error, as follows:

"I. The trial court erred in holding that a liquor license is not a property interest.

"II. The trial court erred in holding that a liquor license is not a protected right under the due process clause or equal protection clause of the Fourteenth Amendment to the U.S. Constitution or the Ohio Constitution.

"III. The trial court erred in dismissing plaintiffs' complaint."

Plaintiffs purchased the Scioto Trails Tavern located at 4490 Riverside Drive, Upper Arlington, in April 1981, for a total purchase price of $160,000, of which $5,000 was specified for bar fixtures, and $20,000 for a liquor license. They invested an additional $35,000 for improvement to the tavern, which had been in business and had held a liquor license for more than forty years before being reopened in June 1981. A few residents in the neighborhood then started a campaign to eliminate the only liquor establishment in the area, namely, the tavern in question, and circulated petitions for a local-option election in Precincts D and L of Ward 6 of the city of Upper Arlington. In November 1981, at an election held pursuant to R.C. 4301.32 *et seq.,* the electors of said Precincts D and L voted the precincts dry, presumably by a majority of the electors voting "no" on the four questions set forth in R.C. 4301.35. Thereafter, plaintiffs brought this action, seeking a

declaratory judgment declaring R.C. 4301.32 to 4301.39 unconstitutional and the local-option election void at least as applied to plaintiffs and seeking a permanent injunction enjoining the State Department of Liquor Control from taking any adverse action against plaintiffs as a result of the local-option election. The trial court eventually dismissed plaintiff's complaint upon the ground that a liquor license is not property and does not involve a property right.

Plaintiffs do not directly challenge the petition and election procedures but contend that local option is in conflict with the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution or the Ohio Constitution, at least insofar as it acts retroactively to revoke an existing liquor license.

Although three assignments of error are raised, actually a single issue is before us, namely, whether the local-option election in Precincts D and L can be enforced against plaintiffs' existing liquor license. As a technical matter, plaintiffs' liquor license expired at the end of 1981 but was subject to the automatic renewal provisions of R.C. 4303.271(A), unless precluded by the local-option election.

The concept of local option for the control of the sale of liquor has long been recognized as valid in Ohio. See *Gordon* v. *State* (1889), 46 Ohio St. 607, which held constitutional an earlier Act providing for local option in townships. Since the advent of the Eighteenth and Twenty-First Amendments to the United States Constitution, it is generally recognized that intoxicating liquor is peculiarly subject to regulation by the state and is not afforded the same type of constitutional rights as might be afforded other business pursuits, which was, in effect, the underlying foundation for the earlier *Gordon* case, *supra*. Thus, in the second paragraph of the syllabus of *State, ex rel. Zugravu,* v. *O'Brien* (1935), 130 Ohio St. 23 [3 O.O. 74], it is expressly stated that: "Permits

to carry on the liquor business * * * are mere licenses, revocable as therein provided, and create no contract or property right." The Ohio Supreme Court again reached this conclusion in *Abraham* v. *Fioramonte* (1952), 158 Ohio St. 213 [48 O.O. 159], the fifth paragraph of the syllabus stating: "Permits issued by the Department of Liquor Control * * * are personal licenses and are not property which can be mortgaged or seized under execution * * *." In the opinion in *Zugravu,* Judge Williams stated at pages 26-27:

"* * * Such a permit is not a property right in the constitutional sense and, if it may be considered in the nature of property at all, it is limited in its scope by the same legislative act which gives it existence, and the reservation of the power of termination enters into and becomes a part of the grant of permission to carry on the specified business. It follows that if the permit is terminated in a lawful manner under the provisions of the act creating it, the licensee cannot complain as his license to operate was issued to him subject to that contingency. The holdings are uniformly to the effect that such a license does not create a property right within the constitutional meaning of that term, nor even a contract, and that it constitutes a mere permission to engage in the liquor business, which may be revoked in the prescribed legislative manner." (Citations omitted.)

Thus, a liquor license is limited in scope by the legislative provisions providing for its termination. One such contingency provision for termination of a liquor permit is the local-option election statutory provisions providing not only that such a local-option election may be conducted but also that, if the electorate so vote, existing liquor licenses are terminated thirty days after the result of the election. Thus, R.C. 4301.39 provides in part:

"If, as a result of a local-option election * * * the use of a permit is made

wholly unlawful, the permit holder may, within thirty days after the certification of such final result by the board of elections to the department, deliver his permit to the department for safekeeping * * *."

Similarly, and more directly, R.C. 4301.391 provides that:

"No permit premises shall remain in operation inconsistent with the results of a local-option election after the thirty day period set forth in section 4301.39 of the Revised Code and no court other than in a recount or election contest shall suspend or hold in abeyance any restriction or cancellation brought about by a local option election pursuant to sections 4301.32 to 4301.41, inclusive, and 4305.14 of the Revised Code."

Accordingly the teaching of *Zugravu* is that the holder of a liquor permit holds the permit subject to the exercise of the right of local option as set forth in R.C. 4301.32 *et seq.*, with the contingency of termination specifically set forth in R.C. 4301.39 and 4301.391. In other words, the liquor permit is held subject to a condition subsequent, namely, the holding of a local-option election resulting in the area in which the permit premises is located becoming dry. Such contingency divests the liquor permittee of the right to continue to operate a business at the permit location but does not divest the holder of the liquor permit of the permit itself, since R.C. 4301.39 specifically provides that, in such contingency, the permit may be placed in safekeeping pursuant to R.C. 4303.272, which preserves to the permit holder any monetary value of the liquor permit allowing him to renew the permit once and to transfer it to a different location or to another person pursuant to the provisions of R.C. 4303.272.

The effect upon a preexisting liquor license of a local-option election in which is voted dry the area in which the licensed premises is located is well-stated in 45 American Jurisprudence 2d 565, Intoxicating Liquors, Section 109:

"Liquor licenses are not contracts, and create no vested rights, but are simply temporary permits which are subject to revocation by the power authorizing their issuance, and licensees in local option territory may be deprived of their right to sell by an adverse vote on the liquor question. The fact that licensees are thereby deprived of the use of their bar fixtures for the sale of liquors does not deprive them of their property without due process of law, although the fixtures are useless for other purposes. * * *"

The latter statement is predicated upon *People* v. *McBride* (1908), 234 Ill. 146, 84 N.E. 865, in which the Illinois court took much the same approach as the Ohio Supreme Court in *Zugravu, supra,* finding that the bar owner took his liquor license subject to the risk that the business might thereafter be made unlawful in the manner prescribed by law, in that instance, the enactment of a local-option law prohibiting the sale of liquor by a municipality. Other states have reached the same conclusion. Thus, the Arkansas Supreme Court in *Yarbrough* v. *Beardon* (1944), 206 Ark. 553, 557, 177 S.W.2d 38, held to a similar effect with respect to a local-option election, stating:

"Since the sale of intoxicating liquors is a mere license or privilege granted by the State, appellant Phillips took his license with its concomitant perils, including the right of the people under said act to take away from him, with or without notice, the privilege theretofore granted him, there being no contract or property right involved."

Although holding that there was a delayed effectiveness to the local-option election, the Idaho Supreme Court in *Nampa Lodge No. 1389* v. *Smylie* (1951), 71 Idaho 212, 216, 229 P. 2d 991, stated:

"A license to sell intoxicating liquors in a municipality is also subject to the authority vested in such municipality by statute to prohibit the sale of intoxicating liquors. * * *

"After such enactment a license or

permission granted before the adoption of the law is no protection to one who makes a sale after the local-option law becomes effective * * *. The licensee cannot be heard to complain of the revocation of his license as divesting him of any right for the reason that the licensee, by accepting the license, thereby assents to all the conditions of that act; his acceptance of the liquor license carries with it the implication of an agreement with the issuing authority that it may, pursuant to the terms of the act, exercise its power of revocation in accordance with the act under which the privilege was granted; moreover, as a general proposition, a license to sell liquor is revoked or annulled * * * by change in policy or in legislation, where any such change is inconsistent with the further exercise of the privilege conferred by the license. Such change in policy embraces an election under a local option law."

To the same effect, see *Martin* v. *Bd. of Supervisors* (1938), 181 Miss. 363, 178 So. 315; *Malito* v. *Marcin* (1973), 14 Ill. App. 3d 658, 303 N.E.2d 262; and *Liquor Hut* v. *Marcin* (1980), 84 Ill. App. 3d 718, 406 N.E. 2d 139.

Almost every jurisdiction considering the issue has concluded that a liquor license or permit is neither a contract nor a property right but, instead, a mere privilege, revocable pursuant to the terms of the statute authorizing the issuance of the permit. Thus, in this case, plaintiffs have been deprived of no property right by being denied the continuation of use of their liquor permit at the permit premises as a result of the local-option election, since by accepting the liquor permit, they consented to all the conditions of the liquor-control law, including the right of the electors in the precinct involved to vote the area dry in a local-option election.

Plaintiffs, however, rely, *inter alia,* upon two federal cases. The first, *Midwest Beverage Co.* v. *Gates* (N.D. Ind. 1945), 61 F.Supp. 688, is only a district court decision, even though by a three-judge panel. In that case, it is stated at page 691:

"* * * On the other hand, the use of the permit, once granted, has the elements of property irrespective of what the Legislature may declare about the permit itself, and except for the omnipresent and unlimited power of the state to revoke or modify the terms of the permit in the interest of the public welfare, the use of such permit, if not the permit itself, is property within the meaning of the due process clause of the Federal Constitution.

"* * *

"* * * In other words, the plaintiff contends that under the guise of exercising the police power of the state, the Indiana Legislature has arbitrarily revoked its permit and thereby has deprived it of property without due process of law."

The conclusion of the court, however, was that there was no denial of due process. The second federal case is *Glicker* v. *Michigan Liquor Control Comm.* (C.A. 6, 1947), 160 F.2d 96, decided by the Sixth Circuit Court of Appeals, in which that court found a complaint to state a claim for relief because it alleged that plaintiff's liquor license had been revoked fraudulently and unlawfully through intentional and deliberate discrimination and solely for a political purpose. That court, however, recognized the principles that we have stated above, stating at page 100:

"We recognize the right of a state to regulate, or even prohibit, through the exercise of its police power, the pursuit of certain businesses and occupations which because of their nature may prove injurious or offensive to the public. Such regulation is not prohibited by the Fourteenth Amendment. * * *"

In addition, that case was predicated upon an allegation of discrimination between persons similarly situated. No such contention is present in this case.

Although plaintiffs have raised issues concerning due process and equal protec-

tion, they have not alleged any specific denial of due process or violation not inherent in the exercise of the right of local option by the residents of a precinct. It does appear that plaintiffs operated the only liquor-permit premises within the precincts involved in the local-option election. This only means that plaintiffs previously had a privilege over and above anyone else in that they were the only ones privileged to maintain a liquor business in the two precincts. Were this privilege continued to be extended to plaintiffs despite the local-option election, a constitutional question would arise as to equal protection with respect to others who might wish to seek liquor permits in the territory in question but who would be precluded from doing so by the local-option election. In short, we find no denial of due process or equal protection. As is generally recognized, the right conferred by statute upon the residents of a particular locality to vote their territory "dry" is properly conferred, and the exercise of that right does not deprive any current seller of intoxicating liquors or anyone who wishes to sell them in the future within the affected territory of any constitutional right.

Most importantly, as most of the cases have noted, plaintiffs accepted the liquor permit and commenced operation of the permit premises, including the sale of intoxicating liquors there, with the knowledge and understanding that the statutes of Ohio, and specifically R.C. 4301.32 et seq., provide for the termination of the sale of intoxicating liquors at that location through the exercise of local option by means of a local-option election. In Ohio, every liquor permit owner takes his permit subject to the right of the residents of the territory within which the establishment is located to terminate any right to sell liquor within that territory and at the permit premises through the exercise of local-option election rights pursuant to statute. In effect, the liquor permit is issued and permits one to sell li-quor at the premises, so long as the territory is not voted dry through a local-option election. See Canton v. Imperial Bowling Lanes (1968), 16 Ohio St. 2d 47 [45 O.O.2d 327].

In addition, under Ohio law, the holder of the liquor permit does not lose his permit as the result of a local-option election. The permit itself is not revoked by the local-option election. Rather, all that is terminated is the right to use that permit at the permit location. The permit, however, continues to belong to the permit holder and, to the extent that there be a property interest in the permit itself, the permit holder continues to have that property interest. He may renew the permit and may transfer the permit either to another person or to another location, assuming statutory qualifications are met. In other words, the evidence indicates that plaintiffs paid $20,000 for the permit, and there is nothing in the record herein that would indicate other than that the permit continues to have the same value, either through transfer to another person or by transfer to another location.

Turning more specifically to the assignments of error, we find that none of them is well-taken. With respect to the first, it is well-established that a liquor permit is not property in the traditional sense as the Supreme Court has specifically held. The trial court could not hold otherwise, since it is bound by the Supreme Court holdings in Zugravu and Abraham, supra.

As to the second assignment of error, even though a liquor permit may be subject to protection of due process or equal protection under some limited circumstances, there has been no denial under the present circumstances. Here, we are dealing strictly with the termination of the right to use a liquor permit at a specific location as a result of the area being voted dry at a local-option election. There is nothing in the statutory provisions or in the manner of conduct of the election that constitutes a denial of due

process or a denial of equal protection of the law. This is especially true since the permit was issued with the understanding that the right to use it at the specific location could be terminated by a local-option election conducted in accordance with law. There has been no denial of due process or of equal protection.

As to the third assignment of error, the trial court had no choice but to dismiss plaintiffs' complaint since plaintiffs conceded the holding of the local-option election voting the area dry, which has the effect set forth in R.C. 4301.39 and 4301.391. Accordingly, none of the assignments of error is well-taken.

For the foregoing reasons, all three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

REILLY and NORRIS, JJ., concur.