RICKARD ET AL., APPELLEES, *v.* OHIO
DEPARTMENT OF LIQUOR CONTROL,
APPELLANT.

(No. 85-CA-18 — Decided
August 27, 1985.)

*David W. Cox,* for appellees Robert
W. and Madonna J. Rickard.

*David L. Phipps,* for appellee Fra-
ternal Order of Eagles 1689.

*Paul W. Barrett,* for appellees Den-
nis McGlathen and Raymond Gulley.

*Anthony J. Celebrezze, Jr.,* attorney
general, and *James M. Guthrie,* for ap-
pellant Dept. of Liquor Control.

BROGAN, P.J.  Prior to the fall 1983
general election in Greene County, Ohio,
petitions were properly and timely filed
with the Greene County Board of Elec-
tions for a local option election involving
the sale of alcoholic beverages in adjoin-
ing precincts CLB and CFA in Xenia,
Ohio. At that time, precinct CLB was
"dry" for liquor sales and precinct CFA
was "wet." As mandated by statute, the
only way for precinct CLB to become
"wet" was for it to combine with an ad-
joining precinct and let the voters of
these precincts determine what status
they wished their precincts to continue
to enjoy.

No protests were filed with the
board of elections before or after the
election. On November 8, 1983, voters in
the two precincts voted "No" on the
wet/dry issue disallowing liquor sales in
these precincts. The board of elections
certified the results to the Ohio Depart-
ment of Liquor Control as mandated by
law. On February 7, 1984, the Secretary
of State certified the results of all local
option elections to the Department of Li-
quor Control for proper action.

On April 4, 1984, the Department of
Liquor Control notified the affected per-
mit locations in precinct CFA that their
"right" to sell alcoholic beverages had
been terminated by such election and
they could request safekeeping of their
licenses by the department. On April 10,
1984, Robert W. and Madonna Rickard,
d.b.a. Waterstreet Tavern, the Frater-
nal Order of Eagles, Dennis McGlathen
and Raymond Gully, d.b.a. Sportman's
Club, filed a declaratory judgment ac-
tion in the Greene County Court of Com-
mon Pleas against the Department of Li-
quor Control, for a declaration that R.C.
4301.32 through 4301.42 and R.C.
3501.38 were unconstitutional as applied
to them. In addition, the plaintiffs

sought an injunction against the department restraining it from enforcing the results of the local option election.

After the trial court granted a temporary injunction enjoining the department from enforcing the results of the election, the department answered the complaint and moved to dismiss the complaint for failure to state a cause of action and to dismiss for lack of jurisdiction over the subject matter.

The plaintiffs then moved for summary judgment on their complaint and attached to the motion the affidavits of two voters in precinct CFA who stated they voted in the local option election and voted against the sale of alcoholic beverages. They stated they were unaware such election would affect liquor sales by existing liquor permit holders, and had they known of that they would have voted differently.

Plaintiffs also argued in support of their motion that they did not receive any notice about the local option election until notified by the department in April 1984.

After the defendant department filed its memorandum contra the motion, the trial court granted plaintiffs' motion for summary judgment. Specifically the trial court found the material facts were not in dispute. The court found that the plaintiffs were not notified of the local option election nor did they see the legal advertisement in the local newspaper announcing the election. The court found that R.C. 4301.31 did not preclude the court from exercising jurisdiction in the matter before it because "this is not an action restraining the exercise of any power [of the department] or compelling the performance of any duty under R.C. 4301.31."

The court further found that the plaintiffs, as liquor permit holders, were entitled to due process and equal protection. As such the court held the plaintiffs were entitled to a notice and a hearing before loss of their licenses. Since the statutes concerning local option elections do not provide for actual notice of the election to the permit holders, the statutes are unconstitutional. The court found the election to be an adequate "hearing." The court also found that the statutes in question were unconstitutional as the ballot language fails to inform the voter of the consequences of a negative vote in a "wet" area. The court also found that the department improperly suspended the plaintiffs' licenses as the city of Xenia failed to refund permit fees as required by R.C. 4301.399(D).

Appellant, Department of Liquor Control, appeals and asserts as error three assignments, to wit:

## I

"The lower court erred in failing to dismiss the Ohio Department of Liquor Control as a party since both sections 4301.10(B)(1) and 4301.31, Revised Code, disallow jurisdiction for any court other than the Franklin County Court of Common Pleas and for any matter other than actions involving state liquor stores."

## II

"The Department of Liquor Control is not a proper party to any action to attack the validity of a local option election and failure of a party to properly follow protest and election contest statutory procedures estops him from challenging the election through indirect lawsuits."

## III

"The lower court erred in granting injunctive relief in a proceeding other than in a recount or election contest suit as provided in section 4301.391, Revised Code."

Section 16, Article I, of the Ohio Constitution provides for the waiver of the state's immunity from suit. It has been held that this section of the Constitution is not self-executing. Suits may be brought against the state only in such

manner as may be provided by law. *Wolf v. Ohio State University Hospital* (1959), 170 Ohio St. 49 [9 O.O.2d 416].

R.C. 4301.10(B)(1) provides:

"(B) The department may:

"(1) Sue, but may be sued only in connection with the execution of leases of real estate and such purchases and contracts necessary for the operation of the state liquor stores that are made under Chapters 4301. and 4303. of the Revised Code;"

R.C. 4301.31 provided in pertinent part:

"Except as provided in section 4301.28 of the Revised Code, *no court, other than the court of common pleas of Franklin county, has jurisdiction of any action against* the board of liquor control, the director of liquor control, or *the department of liquor control,* to restrain the exercise of any power or to compel the performance of any duty under Chapters 4301. and 4303. of the Revised Code. * * *" (Emphasis added.)

Numerous courts have had occasion to hold that sections 4301.10 and 4301.31, *supra,* must be applied *in pari materia.* In *Hoffman Candy & Ice Cream Co.* v. *Department of Liquor Control* (1954), 96 Ohio App. 304, 306 [54 O.O. 314], the court stated:

"* * *[S]ubdivision (9) of Section 6064-8, General Code [Section 4301.10, *supra*], which authorizes the department to be sued 'only in connection with the execution of leases of real estate and such purchases and contracts necessary for the operation of the *state liquor stores* that are made under the provisions of this act' did not expressly authorize a suit for damages to be brought against the department due to the express provision in Section 6064-30 [Section 4301.31, *supra*] * * *; that Section 6064-30, General Code, and subdivision (9) of Section 6064-8, General Code, are *in pari materia;* and that Section 6064-30, General Code, is an express limitation on the right to sue authorized by subdivision (9) of Section 6064-8, General Code." (Emphasis *sic.*)

In *Allied Investment Credit Corp.* v. *Kuzjo Tavern, Inc.* (May 18, 1978), Cuyahoga App. No. 37453, unreported, the Cuyahoga County Court of Appeals reversed an order of the Cleveland Municipal Court which directed the Ohio Department of Liquor Control to transfer a liquor permit and enjoined the board from proceeding to suspend or revoke the permit. The action originated in Cleveland Municipal Court when Allied Investment sued Kuzjo Tavern, Inc. on a promissory note. After judgment was entered for Allied, a receiver was appointed who later filed an application to confirm a sale of the tavern and all its assets, including the permit. When a dispute arose over distribution of the assets and the payment of sales taxes as a condition precedent to transfer of the liquor permit, the receiver filed a supplemental complaint adding the Board of Liquor Control and the Ohio Tax Commissioner as parties defendant. The receiver sought restraining orders against these state agencies and that the Department of Liquor Control be ordered to transfer the permit pursuant to the court's earlier order.

When the trial court granted the request of the receiver, the department appealed asserting that the trial court lacked subject matter jurisdiction under R.C. 4301.10(B)(1) and R.C. 4301.31. In reversing the trial court, Judge Krupansky wrote:

"This statute clearly precludes the action taken by the Cleveland Municipal Court. The lower court ordered the Department of Liquor Control to transfer the permit and restrained the Department from proceeding with any hearings or actions for suspension or revocation of the permit held by the receiver. Thus the order restrained the exercise of the Department's powers and compelled the performance of its duties under Chapters 4301 and 4303 of the Revised Code.

Under R.C. 4301.31, the order fell outside the judicial power of the Cleveland Municipal Court.

"* * *

"Article I, Section 16 of the Ohio Constitution provides for the waiver of the State's immunity from suit. It has been held that this section of the Constitution is not self-executing. Suits may be brought against the State only in such manner as may be provided by law. *Wolf v. Ohio State University Hospital, et al.* (1959), 170 Ohio St. 49 [9 O.O.2d 416]. The legislature has provided that the Ohio Department of Liquor Control can only be sued in the Franklin County Common Pleas Court, R.C. 4301.31. In addition, the department may be sued 'only in connection with the execution of leases of real estate and such purchases and contracts necessary for the operation of the state liquor stores * * *.' R.C. 4301.10(B)(1). Clearly, the law has not provided for suit against the Department of Liquor Control in the Cleveland Municipal Court * * *."

In its judgment granting summary judgment to the appellees, the trial court rejected appellant's jurisdictional challenge. The court held that given the plain meaning of R.C. 4301.31, it is evident that the nature of this case does not fall under its terms. The court noted that the action was one for declaratory judgment seeking to determine a statute unconstitutional, and while the nature of the action may have a direct impact on the power of the department, the action does not restrain the exercise of any power or compel the performance of any duty under R.C. 4301.31. The court noted any impact upon the department was ancillary to the main legal issue presented by plaintiff's motion. The court cited *Sheahan* v. *Department of Liquor Control* (1974), 44 Ohio App. 2d 393 [73 O.O.2d 520], as authority for its decision on this issue.

In *Sheahan, supra,* the Lucas County Court of Appeals held that a proceeding brought pursuant to R.C. 3113.21 to withhold wages due a defendant from the department and the order to withhold wages are ancillary to the main legal action against the defendant; are not "any action against the Board of Liquor Control * * * or the Department of Liquor Control * * *" within the meaning of R.C. 4301.31; and are not orders "to restrain the exercise of any power or to compel the performance of any duty * * *" as such phraseology is used in the statute.

In *Sheahan,* the court of appeals noted the jurisdiction of the trial court to enforce R.C. 3113.21 against the state, or any of its agencies, to compel the withholding of wages of a state employee to satisfy a claim against a state employee is provided by R.C. 115.46 (garnishment of state employees). The court also held these two statutory sections must be construed *in pari materia.*

Judge Clifford Brown noted that R.C. 115.46 does not require that the department be made a party of record to the divorce action resulting in the support order which the court enforced by ordering the department to withhold wages pursuant to R.C. 3113.21. He also noted the ancillary garnishment proceedings could be enforced in any court in the state and does not restrict its enforcement to Franklin County.

Judge Wiley concurred in the judgment in *Sheahan* and noted that R.C. 3113.21 and R.C. 115.46 do not permit the state to be sued generally for claims against it, and in this sense do not invoke the doctrine of sovereign immunity. 44 Ohio App. 2d at 401.

In *Burger Brewing Co.* v. *Liquor Control Comm.* (1973), 34 Ohio St. 2d 93 [63 O.O.2d 149], the Supreme Court held in paragraph one of the syllabus that "[a]n action for declaratory judgment to determine the validity of an administrative agency regulation may be entertained by a court, in the exercise of

its sound discretion, where the action is within the spirit of the Declaratory Judgment Act, a justiciable controversy exists between adverse parties, and speedy relief is necessary to the preservation of rights which may otherwise be impaired or lost." It is to be noted that the Department of Liquor Control was a defendant sued in Franklin County Common Pleas Court.

Appellees argue that a real controversy exists between adverse parties, *i.e.,* immediate action is necessary to protect their interests in their liquor licenses. Indeed, R.C. 4303.272 provides in part:

"If, as the result of the election, the * * * permit holder does not deliver * * * his permit to the department for safekeeping * * * the department shall forthwith cancel and pick up the permit."

The trial court held that while the issue before the court, the constitutionality of the local option statutes, had a direct impact on the department, the action of compelling performance or restraining the department was ancillary to the main legal issue.

In *Sheahan,* the department was only incidentally involved as a garnishee. In the matter before us, there are only two litigants, the plaintiffs and the defendant. Either a real controversy exists or it does not. Plaintiffs seeks to restrain the department from taking action against them. Their action is dependent on the validity of the local option election.

Said another way, if the action sought against the department is only incidental or ancillary, then no real controversy exists between adverse parties.

We believe that this action could only be brought in Franklin County Common Pleas Court as mandated by R.C. 4301.31. The first assignment is well-taken.

In its second assignment, the department contends it was not a proper party to any action to contest the validity of the local option election and failure of a party to properly protest or contest the election estops the appellees from challenging the electors indirectly through the declaratory judgment action.

R.C. 4301.33 permits an elector or the permit holder to file a written protest to the local option election with the board of elections no later than forty-nine days before the election. The board shall promptly hear the protest. Appellant contends a legal notice of the impending election appeared in a local newspaper, and it is undisputed no protest was filed by appellees. The appellees also had five days after certification of the election to file a petition for recount, or under R.C. 3515.09 fifteen days after certification of an election to file an election contest. Appellees contend neither of these avenues was pursued because they were not aware of the election until April 1984.

In the case of *25 Electors of Local Option Election* (Oct. 13, 1984), Summit C.P. No. CV 83-12-3637, unreported, the court rejected any constitutional questions involving lack of notice to permit holders by stating:

"While this Court is unable to find the local option statutes unconstitutional, it is quite apparent that the statutes as applied, foster inequities in the election process. The lack of notice to parties potentially affected by an election effectively prevents their campaigning on their behalf and leaves the voting public at a disadvantage in casting an informed vote. Plaintiffs' suggested remedy, a letter from the Board of Elections or the Liquor Control Board to permit holders, is a good one and should be directed to those best able to implement such a solution, the state Legislature."

In *25 Electors, supra,* the plaintiffs contested the election pursuant to R.C. 3515.08 and 3515.09 on the basis of fraud and irregularities in the election

process. The trial court noted that R.C. 4301.33 provides the exclusive procedure for contesting local option petitions, and its provisions are to be strictly construed, citing *McCall* v. *Bd. of Edn.* (1959), 169 Ohio St. 50 [8 O.O.2d 11].

Plaintiffs also contended the lack of notice of the option election effectively deprived them of procedural due process in violation of the Fourteenth Amendment. The trial court rejected the argument that the permit is a property right, citing *State, ex rel. Zugravu,* v. *O'Brien* (1935), 130 Ohio St. 23 [3 O.O. 74]. However, the trial court found that a liquor permit is subject to the protection of due process and equal protection and, relying on *Scioto Trails Co.* v. *Dept. of Liquor Control* (1983), 11 Ohio App. 3d 75, stated that a license holder "has a given right which cannot be infringed upon without an opportunity for a hearing."

In *Scioto Trails Co., supra,* the Franklin County Court of Appeals held that a liquor permit issued by the department is neither a contract nor a property right in the constitutional sense but is subject to limitation and termination as provided by statute. The court held that R.C. 4301.39 and 4301.391 providing for termination of business under an existing liquor permit as a result of a local option election violate neither the Due Process nor the Equal Protection Clauses of the federal and Ohio Constitutions.

Citing *State, ex rel. Zugravu,* v. *O'Brien, supra,* the Franklin County Court of Appeals stated the holder of a liquor permit holds the permit subject to the exercise of the right of local option as set forth in R.C. 4301.32 with the contingency termination specifically set forth in R.C. 4301.39 and 4301.391.

Judge Whiteside noted that almost every jurisdiction considering the issue has concluded that a liquor license or permit is neither a contract nor a property right, but instead a mere privilege, revocable pursuant to the terms of the statute authorizing the issuance of the permit. The court held the plaintiffs had been denied no property right by being denied the continuation of the use of the permit by the results of the local option election, because by accepting the liquor permit they consented to all the conditions of the liquor control law.

The court noted "though a liquor permit may be subject to protection of due process or equal protection under some limited circumstances, there has been no denial under the present circumstances." *Scioto Trails Co., supra,* at 79.

In *Bell* v. *Burson* (1971), 402 U.S. 535, the United States Supreme Court held that the suspension of issued drivers' licenses involves state action that adjudicates important interests of licenses, and licenses may not be taken away without procedural due process. Justice Brennan noted in *Bell* v. *Burson* at 539:

"'* * * *Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. Sniadach* v. *Family Finance Corp.,* 395 U.S. 337 (1969); *Goldberg* v. *Kelly,* 397 U.S. 254 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' Sherbert* v. *Verner,* 374 U.S. 398 (1963) (disqualification for unemployment compensation); *Slochower* v. *Board of Education,* 350 U.S. 551 (1956) (discharge from public employment); *Speiser* v. *Randall,* 357 U.S. 513 (1958) (denial of a tax exemption); *Goldberg* v. *Kelly, supra* (withdrawal of welfare benefits). * * *" (Emphasis added.)

In *Fell* v. *Bur. of Motor Vehicles* (1972), 30 Ohio App. 2d 151 [59 O.O.2d 269], the Court of Appeals for Cuyahoga County held that before the state could suspend a driver's license, actual notice of the suspension and the right to appeal the suspension must precede the suspension taking effect. The court held that R.C. 4511.191(E) which provides notice to the licensee at his last known address would meet the procedural due process requirements of *Bell* v. *Burson, supra.* See, *Fell, supra,* at 158; see, also, *Tripodi* v. *Liquor Control Comm.* (1970), 21 Ohio App. 2d 110 [50 O.O.2d 212].

"The fundamental requisite of due process of law is the opportunity to be heard." *Grannis* v. *Ordean* (1914), 234 U.S. 385, 394. The trial court found, and the appellees concede, that the local option election served as the appellees' hearing on whether their licenses should be withdrawn from their present locations.

"[The] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane* v. *Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314. Personal service guarantees actual notice of the pendency of a legal action, it thus presents the ideal circumstances under which to commence legal proceedings against a person, and has traditionally been deemed necessary in actions styled *in personam. McDonald* v. *Mabee* (1917), 243 U.S. 90.

Recently the Supreme Court of the United States held that a provision of Kentucky law that permitted service of process in forcible entry or detainer actions to be made by posting a summons "in a conspicuous place on the premises," if the defendant or a member of the defendant's family over ' sixteen years of age cannot be found on the premises did not satisfy minimum standards of due process where posting oc-curred after only one effort was made to serve the tenant, where use of the posting resulted in a failure to provide actual notice to the tenant in a significant number of instances, and where the notices posted on apartment doors were not infrequently removed by children or other tenants before they had their intended effect. *Greene* v. *Lindsey* (1982), 456 U.S. 444.

The Supreme Court held in *Greene* that the Kentucky law failed to afford appellees adequate notice of ·the proceedings against them before issuing final orders of eviction, and thus the state deprived them of property without due process of law required by the Fourteenth Amendment. The court noted in the syllabus at page 445:

"(a) 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is *notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 * * *.

"(b) *In light of the fact that appellees were deprived of a significant interest in property and, indeed, of the right to continued residence in their homes, it does not suffice to recite that because the action was in rem, it was only necesary to serve notice 'upon the thing itself.' The sufficiency of the notice must be tested with reference to its ability to inform people of the pendency of proceedings that affect their interests.* * * *

"(c) Notices posted on the doors of tenants' apartments were 'not infrequently' removed before they could be seen by the tenants. Whatever the efficacy of posting notice on a door of a person's home in many cases, it is clear that, in the circumstances of this case, merely posting notice on the apartment

door did not satisfy minimum standards of due process. * * *

"(d) Neither the statute nor the practice of process servers provides for even a second attempt at personal service. The failure to effect personal service on the first visit hardly suggests that the tenant has abandoned his interest in the apartment such that mere *pro forma* notice might be constitutionally adequate. * * *

"(e) *Notice by mail in the circumstances of this case would go a long way toward providing the constitutionally required assurance that the State has not allowed its power to be invoked against a person who has had no opportunity to present a defense.* * * *

"649 F. 2d 425, affirmed." (Emphasis added in part.)

R.C. 3501.03 provides:

"At least ten days before the time for holding an election the board of elections shall give public notice by a proclamation, posted in a conspicuous place in the courthouse and city hall, or by one insertion in a newspaper published in the county, but if no newspaper is published in such county, then in a newspaper of general circulation therein.

"The board shall have authority to publicize information relative to registration or elections."

While R.C. 3501.03 authorizes the board to publicize information relative to the election, there is no requirement in the statute that the notice identify specific issues to be determined at the election. While appellant contends that appellees do not contest that an advertisement of the November 1983 election was publicized prior to the election, appellees contend they did not see it, nor were they aware of the "local option" election, until the department sought to "safekeep" their permits in April 1984.

There is no evidence before us that the permit holders reside in the city of Xenia where the publication occurred in a local newspaper. In any event, such public notices often appear in small print in obscure portions of the newspaper. Such notices often go unnoticed by the electorate. Also it cannot be seriously questioned that the interest in the outcome of the local option election of the permit holders differs in kind and degree than that of the electorate at large. The outcome of the election affects the very livelihood of the permit holders. Quite often, a permit holder has invested substantial amounts of time, labor, and money in developing a business greatly dependent upon the possession of a valid liquor permit. Many permit holders have had existing permits for many years with loyal customers who live near the liquor establishment. It is small comfort that the license is not revoked entirely, but is held in safekeeping, should the permit holder find another location in a "wet precinct" which conforms to zoning and other legal or other practical requirements.

Indeed, a tenant who is forcibly required to move as a result of a forcible detainer action may find an apartment in another location. The vital "interests" which a permit holder has in keeping his permit for use in a particular location demands that the state provide procedural due process before that permit location is taken from the holder. Elections provide the permit holders with their hearing. The notice required of the hearing must be reasonably calculated to apprise the permit holder of the "hearing" so that he may meaningfully participate in the process. The permit holder may then alert the affected electorate of the "pros and cons" of turning a "wet" precinct "dry" and its resultant effect on the permit holder and the public at large.

Appellant's argument that appellees failed to pursue their statutory remedies of "protest and contest" presupposes the permit holders had notice of the election in time to pursue those remedies. There is no evidence appellees had that opportunity.

We are not unmindful of the trial

court's duty and that of this court to give every intendment and presumption that the legislature has acted constitutionally in the passage of legislation. *State, ex rel. Swetland,* v. *Kinney* (1982), 69 Ohio St. 2d 567 [23 O.O.3d 479].

In *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142, 147 [57 O.O. 134], the Ohio Supreme Court stated:

"A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. This court has held enactments of the General Assembly to be constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt."

In *Xenia* v. *Schmidt* (1920), 101 Ohio St. 437, the Supreme Court held the presumption of validity of a legislative enactment cannot be overcome unless it appears that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution.

With these principles in mind, we find that to the extent R.C. 4301.32 local option election provisions fail to provide reasonable notice to existing liquor permit holders of an impending local option election, the statute is unconstitutional in that it fails to provide the requisite procedural due process mandated by the Ohio and United States Constitutions. The trial court properly found the statute unconstitutional. The assignment of error is accordingly overruled.

In the last assignment of error, the appellant contends the trial court erred in granting injunctive relief in a proceeding other than a recount or election contest suit as provided by R.C. 4301.391.

As previously indicated in our treatment of the second assignment, we find that appellant's argument that the court was powerless to act because appellees had failed to protest or contest the local option election to be without merit in light of their failure to receive reasonable notice of the election until April 1984.

To the extent, that the trial court granted injunctive relief absent subject matter jurisdiction, the assignment is well-taken. (See our treatment of the first assignment.)

Because the court lacked jurisdiction over the subject matter of this dispute, the judgment of the trial court is reversed.

*Judgment reversed.*

WOLFF, J., concurs.

WILSON, J., concurs in judgment only.