**BROOKPARK ENTERTAINMENT, INC., dba Crazy Horse Saloon, Plaintiff,**

v.

**Sherrod BROWN, et al., Defendants.**

No. C2–90–793.

United States District Court, S.D. Ohio, E.D.

Nov. 6, 1990.

Thomas Peter Michael, Columbus, Ohio, for plaintiff.

Catherine Mary Cola and Chester Tynaen Lyman, Jr., Ohio Atty. General's Office, Columbus, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to the motion of Plaintiff Brookpark Entertainment, Inc. ("Brookpark") for temporary and preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. Brookpark asks for a restraining order enjoining Defendant Secretary of State Sherrod Brown ("Brown"), Ohio Department of Liquor Control Director John Hall ("Hall"), Cuyahoga County Board of Elections Member Robert Hughes ("Hughes"), Cuyahoga County Board of Elections Member John M. Coyne ("Coyne"), Cuyahoga County Board of Elections Member Thaddeus J. Jackson ("Jackson"), Cuyahoga County Board of Elections Member Roger M. Synenberg ("Synenberg"), and Cleveland City Councilman Dale Miller ("Miller"), their agents, servants, employees, attorneys and all other persons in active concert and participation with them from performing their respective duties with regard to the November 6th, 1990, election on the question of whether the sale of spirituous liquor, mixed beverages, wine and beer by Brookpark in Precinct W of Ward 20 in the City of Cleveland should continue. Each individual is sued in his/her official capacity and as an individual.

In response to the motion, the Court held a hearing on October 25, 1990, wherein the parties were given the opportunity to place their respective positions and arguments on the record. Furthermore, at the hearing the Court Ordered that the defendants had until October 31, 1990, to submit memoran-

da in opposition. A memorandum in opposition was filed by Defendant Dale Miller; Defendants Sherrod Brown and John Hall filed a brief in opposition coupled with a motion for dismissal; and Defendants Robert Hughes, John M. Coyne, Thaddeus J. Jackson, Roger M. Synenberg, and the Cuyahoga County Board of Elections filed a Brief in Opposition to the Motion for Temporary Restraining Order/Application for Preliminary Injunction.[1]

Specifically, Brookpark seeks a temporary restraining order to prevent the following:

  a. counting or authorizing or ordering the counting of ballots,

  b. certifying or authorizing or ordering the certifying of the results of an election, or

  c. notifying or authorizing or ordering the notifying of the Ohio Department of Liquor Control of the final results of a local option election regarding Brookpark's liquor permit.

Additionally, Brookpark wishes to enjoin Defendant Hall, the Director of the Ohio Department of Liquor Control, from cancelling and picking up the permit holder's permit as is required by Ohio Revised Code § 4301.362, if a majority of the electors of the precinct vote "no" on the question presented at the election.

## FACTS

The facts in the instant matter are essentially not in contention. Brookpark owns and operates a nightclub called the Crazy Horse Saloon at 16600 Brookpark Road in Cleveland, Ohio. The establishment sells alcohol pursuant to a series of class D permits issued to it by the Ohio Department of Liquor Control.[2] On October 1,

---

**1.** It should be noted that the Brief in Opposition filed by and on behalf of Defendants Hughes, Coyne, Jackson, Synenberg, and the Cuyahoga County Board of Elections was filed, without leave of Court, beyond the October 31, 1990 deadline date set by the Court in the October 25, 1990 hearing. While this Court possesses the discretion to strike the brief for its failure to be filed within the Court's mandated time restraints and can find ample reason for doing so, the Court will nonetheless refrain from taking

that course and as such the brief shall be taken under consideration.

**2.** Specifically, the establishment has received a D–1 permit (Ohio Revised Code § 4303.13) for retail sale by hotel, restaurant, club, amusement park, drugstore, lunch counter, boat, vessel, of beer by individual drink or in containers for consumption on or off premises; a D–2 permit (Ohio Revised Code § 4303.14) for retail sale by individual glass or in containers for consump-

1989, Brookpark was cited by the Department of Liquor Control for selling beer upon the permit premises while the permit was under suspension, in violation of Ohio Rev.Code §§ 4301.28 and 4301.58(B).

On October 24, 1989, The Ohio Liquor Control Commission found Brookpark in violation of Ohio Rev.Code § 4301.28 for the sale of alcoholic beverages at the permit premises during the effective period stated in an order of suspension. The Commission ordered that no penalty be imposed.

Pursuant to Ohio Rev.Code § 4301.32.1, if a permit holder has been found by the Liquor Control Commission to have violated any provision of Chapter 4301 or 4303, as Brookpark had, the electors of an election precinct may exercise the privilege of local option [3] over the sale of alcohol by the holder of a class C or D permit. However, before the issue can even be placed on the ballot, and thus voted upon, it is incumbent upon a petitioner to circulate a petition. The petition must be signed by the electors of the precinct equal in number to thirty-five per cent of the total number of votes cast in the precinct for the office of governor at the preceding general election. *Ohio Rev.Code Ann.* § 4301.33.1 (Anderson 1989). Councilman Miller and an individual not named in the case, Joyce Harris, circulated at least six (6) petitions among the electors of Cleveland's Ward 20, Precinct W. On August 23, 1990, once the requisite number of signatures were obtained, the petitions were filed with the Cuyahoga County Board of Elections.

The Ohio Revised Code provides that a petition filed with the Board of Elections shall be open to public inspection. Ohio Rev.Code Ann. § 4301.33.1 (Anderson 1989). The Code further provides that any elector who is eligible to vote on the question set forth on the ballot may file a timely protest against the local option petition. Upon the filing of the protest, the election officials with whom the petition was filed must promptly set a time and place for hearing the protest. At the set hearing, the election officials hear the protest and subsequently determine the validity of the petition. *Id.* The plaintiffs represented to the Court that counsel personally inspected the petition, compared those signatures found on the petition to those signatures contained on voter registration cards, and concluded that pursuant to the relevant code sections, as they currently exist, the petition was in fact valid. Therefore, the plaintiff did not exercise its right to protest the petition.

Due to the accepted validity of the petition and the relevant Ohio law, the November 6, 1990 election ballot for Ward 20, Precinct W of the City of Cleveland will contain the following issue:

> Shall the sale of spirituous liquor, mixed beverages, wine and beer by Brookpark Entertainment, Inc., dba Crazy Horse Saloon at 16600 Brookpark Rd., Cleveland, Ohio 44135 be permitted in this precinct?

Barring an injunction, after the election, the Cuyahoga County Board of Elections will count the ballots and certify that either a majority voted "YES" to the issue, or voted "NO" to the issue. Regardless of how the majority of electors vote on the issue the results are to be certified by the Board of Elections. If in the event a majority vote "NO", the Ohio Department of

---

tion on or off premises by hotel, restaurant, club, boat, or vessel, of wine and mixed beverages by individual glass or in containers for consumption on or off premises; a D–3 permit (Ohio Revised Code § 4303.15) for retail sale by D–2 permit holder not previously holding D–1 permit, of beer by individual glass or in containers for consumption on or off premises; a D–3a permit (Ohio Revised Code § 4303.16) for retail sale after 1:00 a.m. by a D–3 permit holder, or D–3 permit holders having D–1 or D–2 permits, of spirituous liquor, beer, wine and mixed beverages, furnishing music or entertainment; and a D–6 permit (Ohio Revised Code § 4303.18.2) for Sunday sales (1:00 p.m. to midnight) under various liquor permits.

**3.** A "Local Option" is an option of self-determination available to a municipality or other governmental unit to determine a particular course of action without specific approval from state officials. *Black's Law Dictionary* 847 (5th ed. 1979). In the instant matter, as in most matters, "local option" refers to a method used in local elections to determine whether the selling and consumption of alcoholic beverages will be permitted.

Liquor Control will be notified of said result, and the Department will cancel and pick up Brookpark's liquor permits. Brookpark will receive no compensation for the loss of said permits, and the permits cannot be transferred for use in another precinct.[4] It is the cancellation of the liquor permits that have prompted plaintiff to request the issuance of a temporary restraining order. The Court will now turn its attention to the standard to be applied.

## STANDARD OF REVIEW

The standard of review for the issuance of a temporary restraining order, and ultimately a preliminary injunction, has regularly been asserted by the United States Court of Appeals for this circuit as follows:

> ... whether the plaintiffs have shown a strong likelihood of success on the merits; whether the plaintiffs have shown irreparable injury: whether the issuance of a preliminary injunction would cause substantial harm to others; and where the public interest lies.

*Adams v. Federal Express Corp.*, 547 F.2d 319, 323 (6th Cir.1976), *citing North Avondale Neighborhood Ass'n v. Cincinnati Metro. Hous. Auth.*, 464 F.2d 486 (6th Cir. 1972). *Accord, Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977); *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir.1982); *Martin–Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564–65 (6th Cir.1982); and *White Consol. Indus., Inc. v. Whirlpool Corp.*, 612 F.Supp. 1009 (E.D.Ohio 1985).

## ANALYSIS

Before this Court is prepared to apply the above-referenced standard of review, it must first be satisfied that the case has proper jurisdiction before this Court. Federal Courts have jurisdiction to hear "federal questions" or "diversity of citizenship" cases. As the plaintiff properly noted, Federal Courts have the jurisdiction and are not in contravention with the 11th Amendment to award prospective relief against officials of the state and its agencies, enjoining them from violating federal rights and ordering them to conform their future conduct to the requirements of federal law. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062 (6th Cir.1984); *Zielasko v. State of Ohio*, 873 F.2d 957 (6th Cir.1989). However, this case needs a federal question before jurisdiction is properly before this Court. It is to this issue of jurisdiction that the Court will first turn its attention.

A. Jurisdiction

The plaintiff attempts to invoke federal question jurisdiction by alleging that the cancellation of the permits currently held by Brookpark would be in violation of Article I, § 10 of the United States Constitution as a Bill of Attainder, a violation of the plaintiff's Fourteenth Amendment Equal Protection Clause rights, a violation of the plaintiff's Fourteenth Amendment Procedural Due Process rights, and a violation of Article II §§ 1 and 28 of the Constitution of Ohio. However, these alleged constitutional violations occur only if the permits are actually revoked. This Court is of the opinion that the clear and unambiguous interpretation of the relevant Ohio Revised Code sections in application to the facts particular to this case will not permit the revocation of the permits. Therefore, no federal question jurisdiction exists.

Ohio Rev.Code § 4301.32.1 specifically provides as follows:

> The electors of an election precinct may exercise the privilege of local option over the sale of beer or intoxicating liquor by the holder of a class C or D permit at a particular premises situated within the precinct ... if the holder of the permit

---

**4.** The inability to transfer the permit is antithetical to the Ohio laws concerning a general local option election as provided for in Ohio Rev.Code § 4301.32. If in the event an entire precinct is voted "dry", the permit holders are permitted to transfer their permits to other "wet" precincts.

has been found by the liquor control commission to have violated any provision of [Chapter 4301.] or Chapter 4303. or 4399. of the Revised Code *within one year prior to the local option election.* The privilege conferred by this section is in addition to and shall not be construed to conflict with the privilege conferred on the electors of the districts specified in section 4301.32 or 4305.14 of the Revised Code. (Emphasis added).

The parties do not dispute that the violation upon which this action is premised occurred on October 1, 1989. Furthermore, it cannot be in dispute that the election is scheduled to be held on November 6, 1990. Clearly, the election is being held beyond the one year limitation.

On the other hand, Ohio Revised Code § 4301.33.1, the code section addressing the filing of the petitions, provides in relevant part as follows:

> The privilege of local option conferred by section 4301.321 [4301.32.1] of the Revised Code may be exercised if, not later than four p.m. of the seventy-fifth day before the day of a general or primary election, a petition together with a copy of a finding, order, or decision of the liquor control commission indicating that the permit holder has violated any provision of Chapter 4301., 4303., or 4399. of the Revised Code is presented to the board of elections of the county in which the precinct is situated. Such a petition is valid only if the violation of a provision of Chapter 4301., 4303., or 4399. of the Revised Code occurred *within one year prior to the date on which the petition is presented to the board of elections.* The petition shall be signed by the electors of the precinct equal in number to thirty-five per cent of the total number of votes cast in the precinct for the office of governor at the preceding general election for that office ... If the board

finds that the petition is valid, *it shall order the holding of a special election in the precinct on the day of that general or primary election* for the submission of the question set forth in section 4301.352 [4301.35.2] of the Revised Code. (Emphasis added).

Therefore, pursuant to this section and applying the relevant facts it is clear that the filing of the petitions on August 23, 1990 was proper and timely for the November 6, 1990 election. However, the fact that the petitions were filed in a timely fashion merely makes the petitions valid, it does not rectify the fact that the election is not being held within one year of the violation as required by Ohio Rev.Code § 4301.321. Therefore, the November 6, 1990, election is not timely in that the violation occurred over one year prior to the time set for the election. Therefore, as made amply clear by statute, for there to have been a valid filing of the petitions coupled with a valid election, the petitions would have needed to be filed in a timely fashion prior to the May primary elections.

Inasmuch as the application of the relevant state code sections will provide resolution to this matter, the Court need not address the constitutional issues set forth by the plaintiffs, and as such these issues are deemed MOOT and this matter is DISMISSED for lack of jurisdiction.

### B. Constitutional Issues

■ As referenced above, although this matter need not be resolved on the constitutional issues raised, the Court will nonetheless briefly address the viability of these constitutional questions. Prior to the contemplation of any due process argument, a court must first be convinced that a property right exists.[5] It would appear that Ohio case law has repeatedly and consistently found that a property right does not exist with relation to a liquor permit.

---

**5.** The Fourteenth Amendment to the United States Constitution, Section 1 provides as follows:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall

make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

*See, e.g. Scioto Trails Co. v. Dept. of Liquor Control,* 11 Ohio App.3d 75, 462 N.E.2d 1386 (Ohio Ct.App.1983) (motion to certify record to the Supreme Court of Ohio denied); *State, ex rel. Zugravu, v. O'Brien,* 130 Ohio St. 23, 196 N.E. 664 (1935) (provides that "[p]ermits to carry on the liquor business ... are mere licenses, revocable as therein provided, and create no contract or property right."; *Abraham v. Fioramonte,* 158 Ohio St. 213, 107 N.E.2d 321 (1952) ("[p]ermits issued by the Department of Liquor Control ... are personal licenses and are not property which can be mortgaged or seized under execution ..."); and *Rickard v. Dept. of Liquor Control,* 29 Ohio App.3d 133, 504 N.E.2d 724 (1986). The Plaintiff fails to provide even a single Ohio case that finds contrary to those referenced above, and instead attempts to distinguish those cases from the instant matter by arguing that those cases are concerned with general local option elections rather than a particular local option election. While this may be true, the cases are cited for their treatment of the liquor permits as licenses, rather than as a property interest; therefore, the distinction is not well taken, and this Court would be hard pressed to find the existence of a property interest. As such, there can be no due process violation. Further, assuming *arguendo* that the permits were somehow deemed to be a property interest, this Court could find ample procedural due process contained within the Ohio Revised Code sections applicable to local options and the facts herein to satisfy the plaintiff's constitutional right.

■ It should also be noted that this Court, as the Sixth Circuit's Court of Appeals held in *Glicker v. Michigan Liquor Control Comm.,* 160 F.2d 96 (1947): "recognize[s] the right of a state to regulate, or even prohibit, through the exercise of its police power, the pursuit of certain businesses and occupations which because of their nature may prove injurious or offensive to the public. Such regulation is not prohibited by the Fourteenth Amendment." In *Scioto Trails, supra* 11 Ohio App.3d at 79, 462 N.E.2d 1386, that court provided an extremely compelling point when it stated as follows:

> Most importantly, as most of the cases have noted, plaintiffs accepted the liquor permit and commenced operation of the permit premises, including the sale of intoxicating liquors there, with the knowledge and understanding that the statutes of Ohio, and specifically R.C. 4301.32 *et seq.,* provide for the termination of the sale of intoxicating liquors at that location through the exercise of local option by means of a local-option election. In Ohio, every liquor permit owner takes his permit subject to the right of the residents of the territory within which the establishment is located to terminate any right to sell liquor within that territory and at the permit premises through the exercise of local-option election rights pursuant to statute.

With relation to the particular local option election being exercised in the instant matter, the permit holder not only accepts the permit with knowledge that it could be lost in a local option election, but also recognizes they must first be cited by the Ohio Liquor Commission for a violation of the underlying relevant Ohio Revised Code Chapters. Therefore, the particular local option requires an additional improper act on behalf of the permit holder to even be placed in the perilous position of being singled out to lose the liquor permits.

■ The plaintiff's second argument is that their Fourteenth Amendment Equal Protection Clause rights are being violated. Under an Equal Protection Clause argument, based upon these facts, the relevant statutes are subject to a "rational relation" level of scrutiny. The rational basis test as applied to the relevant case and facts is clearly satisfied herein, given the interest of the State in regulating the issuance of liquor permits, the continued possession of liquor permits by their respective holders, and the proper determination of the ramifications for violations of the various permit holder requirements, rules and regulations. There also appears to be some question as to whether Cleveland City Councilman Dale Miller was acting in his personal capacity or as a City Councilman when he chose to

circulate the petitions. If he was acting as a mere citizen, it would thereby eliminate the "acting under color of state law to deprive the plaintiff of its protected interests" as provided in the plaintiff's briefs. Further, this Court is of the opinion that in order for there to be an underlying equal protection argument, there must be some evidence to indicate that the actions taken by the Liquor Commission were unconstitutional. If the evidence would show, which none has even been hinted at herein, that the Liquor Control Agents were issuing violations in such a way as to only single out the plaintiff, while these same violations by other tavern owners went unpunished, then possibly an equal protection argument could prevail. However, with no such evidence set forth before this Court, a local option election, promulgated by the electors, on behalf of the electors, is in no way an equal protection violation. Clearly this constitutional challenge must also fail.

■ The final constitutional challenge alleges that the relevant code sections constitute a bill of attainder. The Court is of the opinion that the code sections clearly fail to single out the plaintiff in an effort to punish the plaintiff. In fact, had the plaintiff not satisfied the condition precedent so as to even be the subject of a particular local option petition, then the statute would not even apply to the plaintiff. Therefore, the Bill of Attainder argument is not well taken.

For those reasons previously provided, the constitutional issues are deemed MOOT and therefore the instant matter is hereby DISMISSED for lack of jurisdiction.

IT IS SO ORDERED.